Filed 6/15/16  Ducoing Enterprises v. Patriot Paving CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DUCOING ENTERPRISES, INC., et al., | |
|     Plaintiffs, Cross-defendants and Appellants, | G051582 |
|       v. | (Super. Ct. No. 30-2012-00616331) |
| PATRIOT PAVING, INC., | O P I N I O N |
|     Defendant, Cross-complainant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick P. Aguirre, Judge.  Affirmed.

Foley Bezek Behle & Curtis, Roger N. Behle, Jr., Muhammed T. Hussain and Justin P. Karczag for Plaintiffs, Cross-defendants and Appellants.

Robert Johnson Law Corporation and Robert A. Johnson for Defendant, Cross-complainant and Respondent.

\*      \*      \*

INTRODUCTION

Patriot Paving, Inc. (Patriot), contracted to perform repair work on a parking lot. The owner of the property was dissatisfied with the work performed, and refused to pay any portion of the agreed-upon price. The trial court found in favor of Patriot on both the complaint by the owner and the cross-complaint by Patriot, and entered judgment in favor of Patriot. The trial court also awarded Patriot its attorney fees.

The property owner contends the judgment must be reversed. We conclude, however, there was substantial evidence supporting the trial court's factual findings in the statement of decision.

The property owner also contends the award of attorney fees must be reduced because a portion of the fees was incurred in connection with its claim against Patriot for negligence, which is not covered by the contractual attorney fees provision. We find no error in the trial court's finding that the contract and tort claims were so inextricably intertwined that apportionment was not required.

We therefore affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Brent Ducoing and Ami Ducoing (the Ducoings) are the trustees of the Brent & Ami Ducoing Living Trust. The trust owns property in Anaheim, California, on which a commercial building and a parking lot are located. The Ducoings also own Ducoing Enterprises, Inc. The Ducoings and Ducoing Enterprises, Inc., will be referred to herein collectively as Ducoing.

In August 2012, Ducoing (doing business as Perfection Painting) contracted with Patriot to perform repairs on the parking lot, for a total payment of $38,135. After

2

construction began, Ducoing requested that Patriot also install a handicap walkway, for the agreed-upon price of $600. Patriot subcontracted some of the work out.

Patriot completed its work in August 2012. Ducoing claimed there were deficiencies in Patriot's work, and refused to pay any portion of the contract price. Patriot's attempts to make repairs were unsatisfactory to Ducoing.

Patriot provided an offer of repairs to Ducoing. Ducoing responded by instructing Patriot to cease all work. Ducoing's counsel then sent Patriot a letter demanding that all the defective work be torn out and redone with proper work and materials.

Patriot requested that a list of repairs be provided so it could correct any problems. Ducoing did not respond to Patriot. One of the items in the contract was striping of the parking lot. Ducoing engaged another company to perform that work, although Patriot was able to do the work and did not refuse to perform.

Ducoing engaged an engineer in October 2012 to develop a punch list of recommended necessary repairs, but that list was not provided to Patriot until after the litigation had ensued. The punch list specified particular areas needing repair. None of the work on the list had been performed by anyone as of the time of trial.

Ducoing sued Patriot for breach of contract and negligence. The complaint sought damages and contractual attorney fees. Patriot filed a cross-complaint against Ducoing for breach of contract and an open book account. Patriot's cross-complaint sought damages, interest, and contractual and statutory attorney fees.

Following a bench trial, the court issued a statement of decision in which it found in favor of Patriot on the complaint, and also found in favor of Patriot on the cross-complaint. The court ordered Ducoing to pay Patriot $39,335, plus interest, as well as costs and reasonable attorney fees. Judgment was entered in November 2014.

Ducoing filed a motion for a new trial, which the trial court denied. Ducoing timely filed a notice of appeal from the judgment.

3

Patriot filed a motion for attorney fees. The trial court granted the motion in April 2015, and awarded Patriot a total of $91,819.58, which had been incurred by three different law firms. In June 2015, the trial court entered an amended judgment awarding Patriot its damages as well as interest and the attorney fees and costs.

DISCUSSION

I.

*SUBSTANTIAL EVIDENCE SUPPORTED THE JUDGMENT.*

"Where the court issues a statement of decision, it need only recite ultimate facts supporting the judgment being entered. [Citation.] If the judgment is supported by factual findings based on substantial evidence, the reviewing court affirms. [Citation.] Conflict in the evidence is of no consequence." (*People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1071.) "Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court's decision." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)

Ducoing argues on appeal that the judgment must be reversed because there was not substantial evidence to support two of the findings in the statement of decision:

1. That the parking lot had a preexisting grade of less than 2 percent.

2. That Patriot substantially completed the work on the parking lot.

Substantial evidence supported the trial court's finding that the parking lot had a preexisting grade of less than 2 percent before Patriot began work. Michael Conner, Patriot's project manager for the Ducoing project, testified he had been to the property before beginning work under the contract, and the parking lot was basically flat, and had less than a 2 percent grade.

4

Ducoing challenges that testimony, contending that Conner later testified the grade could not be determined by looking at it, and, in fact, would require taking measurements or testing, which he admitted he had not done. The testimony Ducoing cites reads as follows:

"Q. Did you think it would be a good idea to document whether there was an existing drainage issue on the property before you started your work with a photograph?

"A. A photograph won't tell you percentage of a difference.

"Q. Fair enough. Did you think it would be necessary then to get some equipment out, a level or something else that you could use to determine the degree of fall in any particular area to determine if according to your agreement it's less than one percent on concrete or two percent on asphalt?

"A. In order to do that in certain areas, that can require engineering and getting an engineer company to design an area, what they want to do there."

That testimony does not contradict Conner's testimony that the grade was less than 2 percent, nor does it support Ducoing's contentions in its opening brief.

Additionally, Michael Draper, Patriot's owner, who also visited the property, testified the parking lot was "pretty flat" and had less than a 2 percent grade after the asphalt had been poured.[1] Because a uniform overlay of one inch of asphalt had been poured, Draper was able to reasonably infer that the parking lot grade had been less than 2 percent before Patriot began the project. Patriot's expert witness testified that the preexisting condition of the property would not allow for more than a 2 percent grade, based on the unchangeable elevations of the building pad and the driveway leading to the street.

---

[1] Ducoing's expert witness confirmed that the current grade of the parking lot is less than 2 percent.

Ducoing's expert witness testified that core samples from the parking lot could have helped determine what the original grade was. Although core samples were taken by Ducoing, they were never tested, and apparently no longer exist. The trial court considered the lack of core samples and was entitled to draw a reasonable inference against Ducoing due to its failure to preserve and produce the core samples. (Evid. Code, §§ 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."], 413 ["In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."].)

We further conclude there was substantial evidence supporting the trial court's finding that Patriot substantially performed its obligations under the contact. "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. [Citations.] Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact. [Citations.]" (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277-278.)

The contract between Ducoing and Patriot listed three items Patriot was to perform. There is no question that Patriot performed two of those (albeit, not to Ducoing's satisfaction), and was prevented from performing the third by Ducoing. Patriot's expert witness testified that Patriot substantially completed its work under the contract:

"Q. Absent the punch list items, was Patriot Paving's job on the project substantially complete?

"A. Yes.

6

"Q. Why do you say that?

"A. They completed the work in their contract or at least all the work they were allowed to do. They did the overlay. They did the three-inch replacement. They did the valley gutter and they came in and did repairs to the concrete curbs as requested. [¶] It's my understanding they requested to do additional punch list item repairs but were denied."

The alleged failure of the work performed by Patriot to meet Ducoing's standards did not affect the functionality of the parking lot. Since Ducoing ordered Patriot to stop working on the parking lot, no further repairs have been undertaken by anyone. At the time Patriot performed the work in question, one of the four rental spaces in the commercial building was occupied; at the time of trial, all four spaces were in use, refuting any claim that the repairs made the parking lot or the building unusable.

Ducoing claims Draper admitted Patriot did not substantially complete the work. To the contrary, Draper testified as follows:

"Q. Do you agree with Mr. Marvin's description that substantial completion in the industry means you've got more outstanding than ten percent of the total contract price?

"A. Not necessarily.

"Q. What's the definition?

"A. Substantial completion is a large portion of work is completed. Even though there are some punch list items, we typically get paid 90 percent even if we have more money owed or more work to do. [¶] So if we complete a substantial amount of work, most agencies will actually pay up to the 90 percent and withhold the ten to ensure that you come back and finish the work."

Ducoing argues that the cost to correct the deficiencies in Patriot's work should have been off set against the judgment. Ducoing raised offset as an affirmative

7

defense to Patriot's cross-complaint, but did not raise the issue at trial.[2] The trial court found that "Ducoing failed to act in good faith in not allowing Patriot to return to make the minor repairs but instead insisting that Patriot tear out the pavement and replace it." We can reasonably infer, based on the trial court's explicit findings, that even if the issue had been before the court, it would not have off set the damages.

Substantial evidence supported the trial court's factual findings included in the statement of decision that the preexisting grade of the parking lot was less than 2 percent, and that Patriot substantially completed its work on the parking lot. Therefore, we affirm the judgment.

## II.

### *THE TRIAL COURT DID NOT ERR IN THE AWARD OF ATTORNEY FEES.*

### A.

### *Timeliness of Appeal*

Patriot argues that Ducoing's appeal from the award of attorney fees is jurisdictionally barred because Ducoing did not separately appeal from the amended judgment that included the attorney fee award. As to attorney fees, the original judgment reads as follows: "Defendant and Cross-Complainant Patriot Paving Inc. shall also recover its attorney's fees ~~in the amount of~~ $ per motion." The trial court struck the words "in the amount of" from the proposed judgment submitted by counsel, and added the handwritten notation "per motion." The amended judgment reads, in relevant part, as follows: "Defendant and Cross-Complainant Patriot Paving Inc. shall also recover its attorney's fees in the amount of $91,819.58."

---

[2] The issue of offset was not addressed in Ducoing's trial brief, during testimony, or during closing argument.

The general rule is that when a judgment determines a party's entitlement to attorney fees, and the amount of the fee award is determined by a postjudgment order or amended judgment, an appeal from the original judgment "subsumes any later order setting the amounts of the award." (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998.) In *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171-1172, the court concluded that a separate appeal from a postjudgment order awarding fees was necessary when the judgment read, "'[a]ward of attorney's fees and costs shall be determined by post-judgment application.'"

Here, the original judgment, as interlineated by the trial court, determined Patriot's entitlement to attorney fees. The use of the phrase "shall recover" assumes entitlement, while the phrase "per motion" required Patriot to file a motion establishing the amount to which it was entitled. By contrast, a judgment providing the award of attorney fees "'shall be determined'" (*Colony Hill v. Ghamaty*, *supra*, 143 Cal.App.4th at p. 1171) by a later motion does not itself resolve the issue of entitlement to fees.

To the extent there is any question whether the original judgment subsumed the later award of attorney fees, the question is resolved by the statement of decision, which reads, in relevant part: "Judgment is for Defendant and Cross Complainant . . . in the principal sum of $39,335 . . . *plus* costs and *reasonable attorney's fees* per memorandum." (Italics added.) We conclude Ducoing's notice of appeal from the original judgment subsumed the later attorney fee award.

B.

*Standard of Review*

"'The standard of review on issues of attorney's fees and costs is abuse of discretion. The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings

9

necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.' [Citation.]" (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.) Specifically, where the issue is the apportionment of a fee award between fees incurred on a contract claim and fees incurred on other, noncontract causes of action, the decision is reserved to the trial court's discretion. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 101, 1111.)

## C.

### *The Trial Court Did Not Err in Refusing to Apportion Attorney Fees.*

Ducoing raises a single argument to challenge the award of attorney fees: The trial court erred by failing to apportion attorney fees, and therefore erred in awarding fees for work performed in connection with the tort claim against Patriot. Generally, if both contract and tort claims are asserted, and a party prevails on both, attorney fees may only be recovered for time spent prosecuting or defending the contract claims. (Civ. Code, § 1717; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 615; *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 827-828.) But when the contract and noncontract claims are """"inextricably intertwined,"""" the court need not apportion fees. (*Abdallah v. United Savings Bank*, *supra*, 43 Cal.App.4th at p. 1111.)

We conclude the trial court did not abuse its discretion in refusing to apportion Patriot's attorney fees between those incurred in connection with the contract and noncontract actions. The trial court's finding that "[t]he issues were common between the contract and tort claims and the defense of both was so inextricably intertwined, the fees cannot be apportioned with any logical rationale for the apportionment," is supported by substantial evidence. The same facts and issues were involved in both the breach of contract and the negligence claims asserted against Patriot by Ducoing, and in Patriot's cross-complaint for breach of contract and an open book account against Ducoing. Ducoing's claims in the complaint were based on the same

10

alleged facts that supported its affirmative defenses to the cross-claims. The key issue in all of Ducoing's claims and defenses was that Patriot's work was performed improperly, defectively, and incompletely, relieving Ducoing of the duty to pay for the work.

Two of the law firms representing Patriot—Vrevich & Associates and Horton Oberrecht Kirkpatrick & Martha—were appointed by Patriot's insurance carrier.[3] It is true that if Patriot had not been sued for negligence, the insurance carrier's duty to defend would not have arisen. However, that does not have any impact on the extent to which the contract and noncontract claims were intertwined. Ducoing states, without any evidentiary support, that those firms "only represented Patriot in the defense of the tort (negligence) claim." However, a review of the billing summaries and invoices submitted in support of Patriot's attorney fee award shows that the majority of the work done by counsel retained by the insurance carrier was in connection with discovery, the parties' mediation session, and preparing for and attending trial, without any differentiation between the two different claims. Given the nature of the claims in the case, it was well within the trial court's discretion not to apportion those attorney fees.

The third law firm—Robert Johnson Law Corporation—represented Patriot primarily on the cross-claims, but also defended Patriot against Ducoing's claims until the insurance carrier appointed counsel to represent Patriot. For the same reasons explained *ante*, the trial court acted within its discretion in deciding not to apportion those attorney fees.

---

[3] During the pendency of this case in the trial court, counsel appointed for Patriot by the insurance carrier retired from the practice of law, and a new firm was hired to replace him.

11

DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.



FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.